**EXHIBIT 3**

1
2
3
4          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
5              IN AND FOR THE COUNTY OF CONTRA COSTA
6
7
8   K. PLATINUM GROUP CASES,                    NO. C07-00049
9
10  _____/
11  including all cases consolidated
12  in such proceedings.
13  _____/
14
15                    **<u>ORDER APPOINTING RECEIVER</u>**
16
17
18      Attached hereto it the order appointing receiver issued on June 6, 2007, in this
19  matter and manually filed in the above-entitled action.
20
21                                           Digitally signed by David Flinn
                                             DN: cn=David Flinn, c=US, o=Superior Court,
22  Dated: June 8, 2007            Da S F.D.  ou=Dept. 6, email=dflinn@contracosta.courts.ca.gov
                                             Reason: I am the author of this document
                                             Location: Martinez, CA
23                                           Date: 2007.06.08 15:41:15 -07'00'
24                              Judge of the Superior Court
25
26
27
28

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| RONALD W. CARTER<br>2201 Broadway, Suite 815<br>Oakland, CA 94612<br>TELEPHONE NO.: 510-465-6500   FAX NO. *(Optional):* 510-465-1330<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Dorothy Daniels | **COPY**<br><br>**F I L E D**<br>JUN 6 - 2007<br>K. TORRE, CLERK OF THE COURT<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF CONTRA COSTA<br>by J. Powers<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez 94553
BRANCH NAME:

PLAINTIFF: DOROTHY DANIELS

DEFENDANT: K. PLATINUM GROUP, INC., et al,

| EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW CAUSE<br>[✓] AND TEMPORARY RESTRAINING ORDER—RENTS, ISSUES, AND<br>PROFITS | CASE NUMBER:<br>C07-00483 |
|---|---|

## NOTICE OF HEARING

| Date: June 25, 2007 | Time: 9:00 a.m. | Dept.: 6 | Room: |
|---|---|---|---|

The address of the court [✓] is shown above [ ] is *(specify):*

## ORDER TO SHOW CAUSE

1. **To defendant** *(name each):*

   K. Platinum Group, Inc., K. Platinum International Group, Inc., K. Platinum Associates, Inc., K. Platinum International Associates, Inc., K. Platinum Financial, Inc., K. Platinum International Financial, Inc., K. Platinum Realty, Inc. and K. Platinum International Realty, Inc.

2. **THE COURT ORDERS** the defendants named in item 1 to appear in this court at the date, time, and place shown in the box above to give any legal reason
   a. Why a receiver should not be confirmed to
      (1) take possession and continue in possession of the property described in Attachment 2a *(attach a description of the real and personal property subject to the receivership) (the "property"),* and
      (2) manage the property in accordance with this order until further order of this court.
   b. Why you should not be prohibited from controlling or receiving any income from the property described in Attachment 2a.

## ORDER APPOINTING RECEIVER

**THE COURT ORDERS,** pending the hearing on the Ex Parte Order to Show Cause, the following:

3. **Receiver.** *(Name):* SUSAN L. UECKER
   is appointed as receiver to take possession of the property described in Attachment 2a.

4. **Receiver's oath and bond.** The receiver shall immediately, and before performing any duties:
   a. execute and file a receiver's oath, and
   b. file the bond required by Code of Civil Procedure section 567(b) in the amount of: $ 10,000.00

5. **Receiver's fees.** The receiver may charge for the receiver's services no more than *(check all that apply):*

| | | | | | |
|---|---|---|---|---|---|
| a. | [ ] $ | [ ] per month | [ ] per hour | [ ] other *(specify):* | |
| b. | [ ] | percent of gross monthly rents | | | |
| c. | [ ] | the greater of a or b | | | |
| d. | [✓] $25,000 | as a one-time start-up fee | | | |

Page 1 of 5

Form Approved for Optional Use<br>Judicial Council of California<br>RC-200 [Rev. January 1, 2007]

**EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW
CAUSE AND TEMPORARY RESTRAINING ORDER—RENTS,
ISSUES, AND PROFITS**
*(Receivership)*

Code of Civil Procedure, §§ 527,<br>529, 564(b)(10); Cal. Rules of<br>Court, rules 3.1175, 3.1176, 3.1177<br>www.courtinfo.ca.gov

**RC-200**

| | |
|---|---|
| PLAINTIFF (Name): DOROTHY DANIELS | CASE NUMBER: |
| DEFENDANT (Name): K.PLATINUM GROUP, INC., et al, | C07-00483 |

6. ☐ **Management company.** The receiver may employ the management company of (name):

    a. ☐ The receiver may pay the company not more than
        (1) ☐ $        ☐ per month ☐ per hour ☐ other (specify):
        (2) ☐      percent of gross monthly rents
        (3) ☐ the greater of (1) or (2)
        (4) ☐ $        as a one-time start-up fee
    b. ☐ Management company fees are included in receiver's fees in item 5.

7. **Disclosure.** The receiver shall immediately disclose to all parties any financial relationship between the receiver and any company hired to assist in the management of the receivership property.

8. **Plaintiff's ex parte bond.** Plaintiff shall immediately file an applicant's bond under Code of Civil Procedure section 566(b) in the amount of: $ none

9. **General duties.** After qualifying, the receiver
    a. shall take possession of and manage the property,
    b. shall collect the income from the property,
    c. shall care for the property and may incur the expenses necessary for that care, and
    d. may change the locks on the property.

10. **Prohibited agreements.** The receiver shall not enter into an agreement with any party to this action about the administration of the receivership or about any postreceivership matter.

11. **Inventory.** Within 30 days after qualifying, the receiver shall file an inventory of all property possessed under this order.

12. **Expenditures.** The receiver shall expend money coming into his or her possession to operate and preserve the property and only for the purposes authorized in this order. Unless the court orders otherwise, the receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with Code of Civil Procedure section 569.

13. **Leases and rentals.** The receiver may without court approval enter into leases for a term not exceeding one year, obtain and evict tenants, and set and modify the amounts and terms of leases.

14. **Security deposits.** Unless the security deposit has been turned over or paid to the receiver, the receiver shall not refund a deposit to a tenant.

15. **Monthly accounting of receiver's income, expenses, and fees.**
    a. The receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of the receivership property, including the receiver's fees and expenses.
    b. The receiver may pay the receiver's own fees and expenses only by the following procedures:
        (1) By serving on all parties a notice of intent to pay to which no objection is served on the receiver within 20 days of the date the notice is served.
        (2) By serving and filing a request for interim payment, which the court then approves.
        (3) By obtaining and filing an agreement among all the parties approving the payment, which the court then approves.
        (4) By filing the receiver's final accounting and report, which the court then approves.
    c. The receiver shall not reimburse the receiver for the receiver's general office administration expenses or overhead without court approval. These expenses include, for example, office supplies and employee payroll, benefits, and taxes.

16. **Management.**
    a. The receiver shall operate the property and take possession of all accounts relating to the property.
    b. The receiver may
        (1) employ agents, employees, clerks, accountants, and property managers to administer the receivership property, and
        (2) purchase materials, supplies, and services reasonably necessary to administer the receivership property.
    c. The receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers, and operators of businesses and property similar to that possessed by the receiver; except the receiver shall not make any capital improvements to the property without prior court approval.

**EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER—RENTS, ISSUES, AND PROFITS**
(Receivership)

| PLAINTIFF *(Name):* DOROTHY DANIELS | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* K.PLATINUM GROUP, INC., et al, | C07-00483 |

17. **Bank accounts.** The receiver
   a. may establish accounts at any financial institutions insured by an agency of the United States government that are not parties to this proceeding,
   b. shall deposit in those accounts funds received in connection with the receivership property, and
   c. shall deposit in interest-bearing accounts money not expended for receivership purposes.

18. **Court instructions.** The receiver and the parties may at any time apply to this court for further instructions and orders and for additional powers necessary to enable the receiver to perform the receiver's duties properly.

19. **Insurance.**
   a. The receiver shall determine upon taking possession of the property whether there is sufficient insurance coverage.
   b. The receiver shall notify the insurer that the receiver is to be named as an additional insured on each insurance policy on the property.
   c. If the receiver determines that the property does not have sufficient insurance coverage, the receiver shall immediately notify the parties and shall procure sufficient all-risk and liability insurance on the property (excluding earthquake and flood insurance).
   d. If the receiver does not have sufficient funds to obtain insurance, the receiver shall seek instructions from the court on whether to obtain insurance and how it is to be paid for.

20. **Employment of attorneys.**
   a. The receiver may employ unlawful detainer attorneys and eviction services without a court order.
   b. ☐  The receiver may employ counsel *(name):*
      at the hourly rate of: $
   c. ☑  Except as provided in items 20a and 27d, before employing counsel the receiver shall apply to the court for an order authorizing the receiver to employ counsel.

21. **Taxpayer ID numbers.** The receiver may use any federal taxpayer identification numbers relating to the property for any lawful purpose.

22. **Duty to turn over possession.** Upon receipt of a copy of a recorded trustee's deed upon foreclosure or written notice from plaintiff that defendant has cured the defaults existing under plaintiff's loan documents or that plaintiff has accepted a deed in lieu of foreclosure, the receiver shall, without further order of the court, turn over possession of the property to the successful purchaser or defendant or plaintiff respectively.

23. **Plaintiff's notification of termination.** Plaintiff shall notify the receiver in writing within 48 hours of any event within plaintiff's knowledge that terminates the receivership.

24. **Receiver's final report and account and discharge.**
   a. *Motion required.* Discharge of the receiver shall require a court order upon noticed motion for approval of the receiver's final report and account and exoneration of the receiver's bond.
   b. *Time.* Not later than 60 days after the receivership terminates, the receiver shall file, serve, and obtain a hearing date on a motion for discharge and approval of the final report and account.
   c. *Notice.* The receiver shall give notice to all persons of whom the receiver is aware who have potential claims against the receivership property.
   d. *Contents of motion.* The motion to approve the final report and account and for discharge of the receiver shall contain the following:
      (1) *Declaration or declarations.* A declaration or declarations: (i) stating what was done during the receivership, (ii) certifying the accuracy of the final accounting, (iii) stating the basis for the termination of the receivership (such as foreclosure or reinstatement), and (iv) stating the basis for an order for the distribution of any surplus or payment of any deficit.
      (2) *Accounting summary.* A summary of the receivership accounting, which shall include (i) the total revenues received, (ii) the total expenditures identified and enumerated by major categories, (iii) the net amount of any surplus or deficit, and (iv) evidence of necessary supporting facts.

**EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER—RENTS, ISSUES, AND PROFITS**
*(Receivership)*

| PLAINTIFF *(Name):* DOROTHY DANIELS | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* K.PLATINUM GROUP, INC., et al, | C07-00483 |

25. **Plaintiff's notice to receiver.** Plaintiff shall promptly notify the receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel. The parties shall give notice to the receiver of all events that affect the receivership.

26. **Bankruptcy Plaintiff's duty to give notice.** If a defendant files a bankruptcy case during the receivership, plaintiff shall give notice of the bankruptcy case to the court, to all parties, and to the receiver by the close of the next business day after the day on which plaintiff receives notice of the bankruptcy filing.

27. **Bankruptcy Receiver's duties.** If the receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this order, the receiver shall have the following duties:

   a. *Turn over property if no relief from stay will be sought.* The receiver shall immediately contact the party who obtained the appointment of the receiver and determine whether that party intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the receiver's obligation to turn over the property (11 U.S.C. § 543). If the party has no intention to make such a motion, the receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession - and otherwise comply with 11 United States Code section 543.

   b. *Remain in possession pending resolution.* If the party who obtained the receivership intends to seek relief immediately from both the automatic stay and the receiver's obligation to turn over the property, the receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)). The receiver's authority to preserve the property shall be limited as follows:

      (1) The receiver may continue to collect rents and other income;

      (2) The receiver may make only those disbursements necessary to preserve and protect the property;

      (3) The receiver shall not execute any new leases or other long-term contracts; and

      (4) The receiver shall do nothing that would effect a material change in the circumstances of the property.

   c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.* If the party who obtained the receivership fails to file a motion within 10 court days after his or her receipt of notice of the bankruptcy filing, the receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

   d. *Retain bankruptcy counsel.* The receiver may petition the court to retain legal counsel to assist the receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

28. **Failure to turn over property.** A receiver who fails to turn over the property in accordance with this order shall not be paid for time and expenses after the date on which the receiver should have turned the property over.

29. [✓] **Other orders.** *(Additional orders may include authority of the receiver to do any other acts arising from special circumstances.)* Other orders [✓] are specified in Attachment 29 [ ] are as follows *(specify):*

| PLAINTIFF *(Name):* DOROTHY DANIELS | CASE NUMBER: |
| DEFENDANT *(Name):* K.PLATINUM GROUP, INC., et al, | C07-00483 |

### ☑ TEMPORARY RESTRAINING ORDER

30. THIS ORDER EXPIRES AT THE DATE AND TIME OF THE HEARING SHOWN IN THE BOX ON PAGE ONE (UNDER "NOTICE OF HEARING") UNLESS EXTENDED BY THE COURT.

31. THE COURT ORDERS DEFENDANT to do the following:
   a. **Turn over property.** Immediately turn over possession of the property described in Attachment 2a to the receiver when the appointment becomes effective, including any security deposits, prepaid rent, other rental or lease payments, and funds in property management bank accounts for the property.
   b. **Turn over related items.** Immediately turn over to the receiver all keys, books, documents, and records relating to the property and advise the receiver of federal taxpayer identification numbers relating to the property.
   c. **Insurance.**
      (1) Immediately advise the receiver about the nature and extent of insurance coverage on the property;
      (2) Immediately name the receiver as an additional insured on each insurance policy on the property; and
      (3) DO NOT cancel, reduce, or modify the insurance coverage.

   d. **Restraints.** Refrain from
      (1) committing or permitting any waste on the property or any act on the property in violation of law or removing, encumbering, or otherwise disposing of any of the fixtures on the property;
      (2) demanding, collecting, or in any other way diverting or using any of the rents from the property;
      (3) interfering in any manner with the discharge of the receiver's duties under this order;
      (4) selling, transferring, disposing, encumbering, or concealing the property without a prior court order; and
      (5) doing any act that will impair the preservation of the property or plaintiff's interest in the property.

   e. ☑ **Other** *(specify):*

   > Defendant KANYA COLEMAN is to cooperate with the receiver in identifying and taking possession of assets.

32. THE COURT ORDERS PLAINTIFF to immediately file a temporary restraining order bond under Code of Civil Procedure section 529 in the amount of: $ 1000.00

33. ☐ OTHER ORDERS ☐ are specified in Attachment 33 ☐ are as follows *(specify):*

### SERVICE AND BRIEFING SCHEDULE

34. By *(date):*                    PLAINTIFF IS ORDERED to personally serve on each defendant or counsel and any other appearing parties, and to file proof of service of, the summons and complaint, the memorandum of points and authorities, these orders, and all declarations and supporting papers.

35. By *(date):* June 15, 2007    DEFENDANT IS ORDERED to personally serve on each plaintiff or counsel and any other appearing parties, and to file proof of service of, any opposition to these orders.

36. By *(date):* June 20, 2007    PLAINTIFF IS ORDERED to personally serve on each defendant or counsel, and to file proof of service of, any reply to defendant's opposition to these orders.

37. Number of pages attached: ___3___

Date: JUN 6 - 2007

_____
JUDGE OF THE SUPERIOR COURT

DAVID B. FLINN

**EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER—RENTS, ISSUES, AND PROFITS**
(Receivership)

Attachment 2a

    1. All bank accounts held by K. Platinum Group, Inc., and its subsidiaries, including K. Platinum International Group, Inc., K. Platinum Associates Inc., K Platinum International Associates, Inc., K Platinum Financial Inc., K. Platinum Realty Inc., and K. Platinum International Realty, Inc..

    2. All real property that is held in the name of any of the companies identified in paragraph 1.

    3. All notes and accounts receivable, including all notes evidencing loans to officers of the companies listed above, loans to affiliates, and loans to any other persons or entities.

Attachment 29

This order of receivership applies to K. Platinum Group, Inc. and all of its subsidiaries, including K. Platinum International Group, Inc., K. Platinum Associates, Inc., K. Platinum International Associates, Inc., K. Platinum Financial, Inc., K. Platinum International Financial, Inc., K. Platinum Realty, Inc., and K. Platinum International Realty, Inc.

The receiver shall take immediate control of each of the aforementioned entities and shall immediately begin to identify and locate all property belonging to those companies. The receiver shall use all efforts to secure the repayment of monies which are shown to be due from officers, affiliates or third parties, and to identify all property that was conveyed in an attempt to defraud creditors, and shall preserve money and property to secure the payment of obligations which are the subject of the various actions brought by "investors" of the company(s), subject to court approval of the retention of counsel for the commencement of litigation.

The receiver shall be authorized without court approval to use funds of the companies to do the following:

1) Pay rent and lease obligations for properties leased by the company defendants;

2) Pay mortgage, taxes, and insurance expenses on all the properties owned by the corporate defendants;

3) Pay salaries of all present corporate employees and Kanya Coleman of corporate defendants;

4) Pay taxes for the corporate defendants;

5) Pay all commissions of real estate transactions and loan originations;

6) Pay real estate related fees such as appraisals.

The receiver may, if deemed appropriate, seek bankruptcy advice concerning: 1) whether a bankruptcy petition should be filed on behalf of any K Platinum Company so as to void fraudulent or preferential transfers or for any other reason, and 2) whether an involuntary petition should be filed as to Kanya

Coleman. Such advice shall be for the purpose of the Receiver submitting her recommendations to the Court concerning whether a bankruptcy petition should be filed or whether other alternatives are preferable, and seek this Court's authorization to proceed. The Court makes no prejudgment as to whether a bankruptcy petition or petitions should be filed.

The receiver is the agent of the court and not of any party. The receiver shall be neutral, shall act for all who may have an interest in the receivership property, and shall hold all assets for the court and not for the plaintiffs or defendants.

Kanya Coleman shall assist the receiver by providing him with: (1) all books and record of the companies identified above; (2) a complete list of all the assets of the companies and the location of those assets, (3) the names, addresses, telephone numbers, and e-mail addresses of all persons who have served as officers or employees of the companies, (4) detailed information concerning all loans made to officers, affiliates, and other persons or entities, including the date and amount of the loan, whether the loan is secured or unsecured, and the nature of the security; and (5) detailed information regarding all conveyances and payments she or the companies have made since January 2006.

This order shall also apply to all those cases which have joined in the application for a receiver and preliminary injunction, including Ervin v. K. Platinum, Case No. C07-00484, Perkins v. K. Platinum, Case No, C07-00485, Wilson v. K. Platinum, Case No. C07-00486, Walker v. K. Platinum, Case No. C07-00106, Braden v. K. Platinum, Case No., C07-00454, Bennett v. K. Platinum, Case No. C07-01075, Levesque v. K. Platinum, Case No. C07-01018, and Doctor v. K. Platinum, Case. No. C07-01016.

CHRISTOPHER R. LUCAS (SBN 95293)
LAW OFFICES OF GOFORTH & LUCAS
2300 Clayton Road, Suite 1460
Concord, California 94520
TELEPHONE: (925) 682-9500
FACSIMILE: (925) 682-2353



F I L E D

MAY 3 1 2007

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____ Deputy Clerk

Attorney for Plaintiffs, AVIS
DOCTOR, CHARI OGOGO, PAULETTE
MAYO, KAREN SMITH, SUZETTE
STEINBERG, THOMAS STEINBERG,

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA

Unlimited Civil Case

AVIS DOCTOR, CHARI OGOGO,
PAULETTE MAYO, KAREN SMITH,
SUZETTE STEINBERG, THOMAS
STEINBERG,

     Plaintiffs,

     v.

NORTH AMERICAN TITLE COMPANY
INC., OLD REPUBLIC TITLE COMPANY,
KANYA TENNYSHA COLEMAN aka KANYA
HILL aka KANYA MAXIMO, CHARLES E.
COLEMAN aka CHARLES E. COLEMAN
SR., YVONNE E. GAMBLE, FREDERICK
C. GAMBLE, JORIE WRIGHT, FLOYD W.
WATSON, FELIX GOLDEN, K PLATINUM
GROUP, INC., K PLATINUM REALTY,
INC., K PLATINUM FINANCIAL, INC.,
K PLATINUM ASSOCIATES, INC., K
PLATINUM INTERNATIONAL, INC., K
PLATINUM INTERNATIONAL
ASSOCIATES, INC., K PLATINUM
INTERNATIONAL FINANCIAL, INC., K
PLATINUM INTERNATIONAL GROUP
INC., K PLATINUM INTERNATIONAL
REALTY, INC., K PLATINUM
PERSONNEL SERVICES, K PLATINUM
INTERNATIONAL ASSOCIATE
INVESTMENT, REAL ESTATE PERSONNEL
SERVICES a business organization

CASE NO.: C07-01016

**POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR
APPOINTMENT OF RECEIVER
[JOINDER]**

DATE: 06/01/07
TIME: 9:00 a.m.
DEPT: 06

HON. DAVID FLINN

LAW
OFFICES
OF
GOFORTH
& LUCAS

unknown, REALLIFE CONSULTING, a
business organization unknown,
OUTERSPHERE INC., OUTERSPHERE
LLC, OUTERSPHERE INVESTMENT
GROUP, LLC, BLUE SKY TRUST, a
business organization unknown,
PROSPERITY MATTERS LLC, POWER OF
SEVEN LOAN-FUND ONE LIMITED
PARTNERSHIP, SANFORD AND PETERSON
INTERNATIONAL INVESTMENT GROUP,
INC., LAND AMERICA aka LAND
AMERICA CAPITAL CORPORATION,
BRENDA ANN MICHELSON, CAROL ANN
DICKSON, CLAYTON GRACE, THOMAS
JENKINS, VIKING APPRAISALS, CRAIG
BUCCELLATO, JESSICA ARANDA,
and DOES 1 to 500, INCLUSIVE,

    Defendants.
_____/

The Law Offices of Goforth & Lucas represent Avis Doctor, Chari Ogogo, Paulette Mayo, Karen Smith, Suzette Steinberg, and Thomas Steinberg, as well as Amy Levesque and George Roach and have been retained to file suit on behalf of five <u>more</u> Plaintiffs, each of whom lost average of $200,000.00 to Defendants "cash-on-cash" investment program, which was actively promoted by Defendant Kanya Tennysha Coleman, K Platinum and a retinue of brokers and investment bankers and insurance people. No money was ever actually invested, and several million dollars simply stolen by "K Platinum".

Plaintiffs submit the declaration of Plaintiff Chari Ogogo to give the court some indication of the slick brochures, seminars, and lavish lifestyle which promoted this predatory

LAW
OFFICES
OF
GOFORTH
& LUCAS

POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER
[JOINDER]

2

ponzi or pyramid scheme, as typical of the similar testimony of the 10 victims represented by Goforth & Lucas, but embodied in the Farmer-Ogogo testimony to avoid undue repetition.

To sum up, all that K Platinum and its associates would do was take money but K Platinum and its associates never did anything to make money. After accepting millions in so-called "investments" Defendants simply closed offices, issued checks written against closed accounts, and provided empty promises of principal repayments after "restructuring".

Defendants recycled some funds they took in back to the initial investors, which convinced many more new investors because "seeing is believing". These carefully engineered first phase false profits, thus seeded, caused many otherwise educated and prudent people to believe that returns were being paid as promised. They were then also induced to join the K Platinum "Equity Partners" scheme, as absentee owners of property with all payments guaranteed made by solely K Platinum, for equity return after 1 to 2 years.

This false promise of a risk free "equity share" was written; as was the false representation that New York Life Insurance guaranteed all investment principal.

In reality, K Platinum used the "equity share" to borrow money in the investor's names and steal it. K Platinum never made any actual investment at any time that it can point to.

1    Those victimized by the "Equity Partners" scheme ended up

2   with very high value to loan ratios in excess of 125%, with the

3   K Platinum brokers doing double escrows and helping themselves

4   to $100,000.00 of loans for each property loans which were taken

5   out in the names of investors used as "Straw buyers". Non can

6   afford the payment or even find borrowers for the house they

7   never saw.

8

9    Defendants used slick brochures replete with carefully

10  constructed verbiage, seminars, trips to Cabo, to target church

11  groups with enticements and guarantees. They exploited their

12  affinity with church groups in particular, and modeled

13  themselves as successful expert and shrewd African Americans

14  when their only actual plan was to take the money and run.

15   The Court should not hesitate to seize every possible

16  asset. This may lead to a return of funds taken from investors.

17   Plaintiffs should have known better, but because of "seeing

18  is believing" reliance on phony profits and initially seemingly

19  valid returns, they lost everything they had saved over a

20  lifetime.

21   Not one investor received a return of capital, instead

22  $8,000,000.00 was stolen from loans which will follow the

23  "investors" for the rest of their lives. To date K Platinum

24  cannot articulate any coherent plan of investment, much less any

25  actual investment.

LAW
OFFICES
OF
GOFORTH
& LUCAS

*POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER
[JOINDER]*                                                                  4

1    Plaintiffs join the motion for receiver.

2  Dated: May 31, 2007                    LAW OFFICE OF GOFORTH & LUCAS

3

4

5                                         CHRISTOPHER R. LUCAS
                                          ATTORNEY FOR PLAINTIFFS
6                                         AVIS DOCTOR, CHARI OGOGO, PAULETTE
                                          MAYO, KAREN SMITH, SUZETTE
7                                         STEINBERG, THOMAS STEINBERG,

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LAW
OFFICES
OF
GOFORTH
& LUCAS

POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER      5
[JOINDER]

# PROOF OF SERVICE

I, declare that I am employed in the County of Contra Costa, State of California. I am over the age of eighteen years and not a party to the within cause; my business address is 2300 Clayton Road, Suite 1460, Concord, California 94520. Upon this day, I served the within, *POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER [JOINDER]*

On the following interested party(s) in said cause:

VIA EMAIL: shroux1@aol.com :
V. Elizaveth Grayson, Esq.

VIA EMAIL: marc@mehlman-terbeek.com : Marc L Terbeek, Esq.

VIA EMAIL: cpham@gareebpham.com :
Christopher Pham, Esq.

VIA EMAIL: sec58@earthlink.net
: Jesse C. Ralph

VIA EMAIL: rwcesq1@aol.com :
Ronald W. Carter

VIA EMAIL: Robert@scwartz-cera.com: Robert J. Scott, Jr.

VIA FIRST CLASS MAIL
David L. Roth
One Kaiser Plaza, Suite 601
Oakland, CA 94501

VIA FIRST CLASS MAIL
Terrance W. Andrews
3150 Hilltop Mall Rd
Richmond, CA 94806

VIA FIRST CLASS MAIL
Scott Clarkson
CLARKSON, GORE & MARSELL
3424 Carson Street, Suite 350

VIA FIRST CLASS MAIL
Torrance, CA 90503

VIA FIRST CLASS MAIL
Newell Walker
160 Delgado Court
Vallejo, CA 90503

[X]    VIA MAIL – CCP §§ 1013(a), 2015.5:
By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United Stated Postal Service at Concord, California, with postage thereon fully prepaid, that same day in the ordinary course of business.

[ ]    VIA OVERNIGHT MAIL/COURIER – CCP §§ 1013(c), 2015.5:
By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and placing each for collection by overnight mail service or overnight courier service. I am readily familiar with my firm's business practice of collection and processing of correspondence for overnight mail or overnight courier service, and any correspondence placed for collection for overnight delivery would, in the ordinary course of business, be delivered to an authorized courier or driver authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that same day, for delivery on the following business day.

[  ]    __VIA FACSIMILE - CCP §§ 1013(e), 2015.5, CRC 2008:__
By arranging for facsimile transmission from facsimile number (925)682-2353 to the above
listed facsimile number(s) prior to 5:00 p.m.   I am readily familiar with my firm's
business  practice  of  collection  and  processing  of  correspondence  via  facsimile
transmission(s) and any such correspondence would be transmitted in the ordinary course
of business.   The facsimile transmission(s) was reported as complete and without error,
and a copy of the transmission report is attached.

[  ]    __VIA HAND DELIVERY - CCP §§ 1011, 2015.5:__
By placing a true copy thereof in a sealed envelope(s), addressed as above, and causing
each envelope(s) to be hand-served on that day, in the ordinary course of my firm's
business practice.

I declare that I am employed in the office of a member of
the bar of this Court at whose direction the service was made.
I declare under penalty of perjury under the laws of the United
States of America that the foregoing is true and correct and
that this declaration was executed on May 31, 2007, at Concord,
California.

cc: Clients                                    By: Liliana Rincon

1  CHRISTOPHER R. LUCAS (SBN 95293)
   LAW OFFICES OF GOFORTH & LUCAS
2  2300 Clayton Road, Suite 1460
   Concord, California 94520
3  TELEPHONE: (925) 682-9500
   FACSIMILE: (925) 682-2353
4



FILED

MAY 31 2007

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA

By_____S. KRICKENIA____, Deputy Clerk

5  Attorney for Plaintiffs, AVIS
   DOCTOR, CHARI OGOGO, PAULETTE
6  MAYO, KAREN SMITH, SUZETTE
   STEINBERG, THOMAS STEINBERG,
7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF CONTRA COSTA

10                      Unlimited Civil Case

11  AVIS DOCTOR, CHARI OGOGO,          CASE NO.: C07-01016
    PAULETTE MAYO, KAREN SMITH,
12  SUZETTE STEINBERG, THOMAS          **DECLARATION OF PLAINTIFF CHARI**
    STEINBERG,                         **OGOGO IN SUPPORT OF MOTION FOR**
13         Plaintiffs,                 **APPOINTMENT OF RECEIVER**
                                       **[JOINDER]**
14         v.
    NORTH AMERICAN TITLE COMPANY
15  INC., OLD REPUBLIC TITLE COMPANY,
    KANYA TENNYSHA COLEMAN aka KANYA
16  HILL aka KANYA MAXIMO, CHARLES E.  **DATE: 06/01/07**
    COLEMAN aka CHARLES E. COLEMAN     **TIME: 9:00 a.m.**
17  SR., YVONNE E. GAMBLE, FREDERICK   **DEPT: 06**
    C. GAMBLE, JORIE WRIGHT, FLOYD W.
18  WATSON, FELIX GOLDEN, K PLATINUM   **HON. DAVID FLINN**
    GROUP, INC., K PLATINUM REALTY,
19  INC., K PLATINUM FINANCIAL, INC.,
    K PLATINUM ASSOCIATES, INC., K
20  PLATINUM INTERNATIONAL, INC., K
    PLATINUM INTERNATIONAL
21  ASSOCIATES, INC., K PLATINUM
    INTERNATIONAL FINANCIAL, INC., K
22  PLATINUM INTERNATIONAL GROUP
    INC., K PLATINUM INTERNATIONAL
23  REALTY, INC., K PLATINUM
    PERSONNEL SERVICES, K PLATINUM
24  INTERNATIONAL ASSOCIATE
    INVESTMENT, REAL ESTATE PERSONNEL
25  SERVICES a business organization

LAW
OFFICES
OF
GOFORTH
& LUCAS

1  unknown, REALLIFE CONSULTING, a
business organization unknown,
2  OUTERSPHERE INC., OUTERSPHERE
LLC, OUTERSPHERE INVESTMENT
3  GROUP, LLC, BLUE SKY TRUST, a
business organization unknown,
4  PROSPERITY MATTERS LLC, POWER OF
SEVEN LOAN-FUND ONE LIMITED
5  PARTNERSHIP, SANFORD AND PETERSON
INTERNATIONAL INVESTMENT GROUP,
6  INC., LAND AMERICA aka LAND
AMERICA CAPITAL CORPORATION,
7  BRENDA ANN MICHELSON, CAROL ANN
DICKSON, CLAYTON GRACE, THOMAS
8  JENKINS, VIKING APPRAISALS, CRAIG
BUCCELLATO, JESSICA ARANDA,
9  and DOES 1 to 500, INCLUSIVE,

10

11      Defendants.
_____/

12      I, CHARI OGOGO, hereby declare:

13      I am a resident of the City of Mountain House, State of

14  California, County of San Joaquin, and I am a plaintiff in the

15  above entitled action.  If called upon, I could competently and

16  completely testify as to the matters asserted herein based on my

17  personal knowledge and observation as an investor who lost

18  almost $160,000.00 dollars and who assumed liability for a

19  purchase loan of almost $900,000.00 based on written promises

20  that K Platinum would guarantee the payments which now overwhelm

21  me and are soon to be foreclosed.

22      **How was I introduced to K Platinum?**

23      I was told about K Platinum by a mutual acquaintance, Rose

24  Marie Jackson in September 2006.  She gave me a few details and

25  invited me to attend a Tuesday night meeting at 1910 Olympic

LAW
OFFICES
OF
GOFORTH
& LUCAS

1   Blvd, Walnut Creek.    Prior to the meeting, I was introduced to

2   Charles Brown, a recruiter and an employee of K Platinum.    He

3   was the Vice President of Sales and Marketing.    He shared his

4   story of how he had become more prosperous.    The name of the

5   program was **Prosperity Matters.**  During the Tuesday night

6   informational meeting I met with Dianna Young, Carole Dickson,

7   Brenda Michelson and Craig Buccellato.    At this meeting other

8   investors were introduced to the audience who had received their

9   phenomenal returns. We were told of several programs to become

10  prosperous:  "cash-on-cash"  and  "equity-share"  programs  and

11  "credit-repair." There were Thursday night meetings emphasizing

12  Wealth Building that were led by Yvonne E. Gamble and Felix

13  Golden.   Yvonne E. Gamble and Felix Golden encouraged investors

14  to diversify and buy land through an agreement with Green Light

15  and K Platinum.    This was another equity share program.    The

16  wealth building seminars were part of Outersphere, LLC and K

17  Platinum ventures.

18      **Why did I believe in K Platinum**?

19      K Platinum used a referral program and people who were

20  recruited were known to you either through church, work or

21  business affiliation. One of my co-worker and his wife were

22  investors and told me this was a great opportunity.  Most of the

23  people had heard of K Platinum through word of mouth.    It was

24  networking.   Many of the investors were African Americans who

25  used the equity in their homes, retirement money and savings to

LAW
OFFICES
OF
GOFORTH
& LUCAS

*DECLARATION OF PLAINTIFF CHARI OGOGO IN SUPPORT OF MOTION FOR APPOINTMENT
OF RECEIVER [JOINDER]*                                                                                    3

make investments in the "cash-on-cash" program.    The brochures
and the written material were glossy and seemed to be authentic
and plausible.    There was a web site that described the
community good that K Platinum proposed to provide.    The
settings of the meetings went from the office space at 1910
Olympic Blvd, Walnut Creek to hotels such as the Embassy Suites,
Crown Plaza Hotels and Marriot Courtyards.

1.    K    Platinum    advertised    for    sale    investment
properties/equity-share    properties    with    no    money    down    to
investors.    Victim investors were told that K Platinum would
provide    down    payment    and    closing    costs    for    the    sale,    secure
renters for the property and manage the properties for the first
year after purchase, including all maintenance costs and tenant
contract.

**How did I make an investment in both "cash-on-cash" and**
**"equity-share" programs?**

I    visited    several    meetings    before    investing.    I    told
Charles Brown I could make an investment; however, my money was
tied to another account and it would more than 45 days to have
access to the funds.    Charles Brown said he had a contact that
could help me refinance my property within 7 to 10 days. Charles
Brown recommended that I not use K Platinum resources for this
refinance, it might take too long.    On September 21, 2006 I had
a signed agreement with Charles Brown, Dianna Young and Kanya
Coleman to allow me time to make my investment of $50,000.00

LAW
OFFICES
OF
GOFORTH
& LUCAS

*DECLARATION OF PLAINTIFF CHARI OGOGO IN SUPPORT OF MOTION FOR APPOINTMENT*    4
*OF RECEIVER [JOINDER]*

1  into the "cash-on-cash" program.   I traveled to San Diego to a

2  meeting in a hotel to meet with Kanya Coleman and Craig

3  Buccellato.   At this meeting in San Diego, Charles Brown, Carol

4  Ann Dickson, Brenda Ann Michelson, Craig Buccellato, Mary Jane

5  Cooper and Zachary Robinson were present. At this meeting, I

6  signed an agreement to list my condominium with K Platinum with

7  Craig Buccellato as the listing agent.  There were other

8  investors from Los Angeles and San Diego in attendance.  On

9  September 28, 2006 I made a $50,000.00 investment and on October

10  6, 2006, I made another investment of $20,000 into the "cash-on-

11  cash" program.

12      In October I met with Amanda Rodriquez, a loan processor

13  who took my information and told me that I qualified to purchase

14  two (2) homes through K Platinum "equity-share" program.  After

15  my first check of $17,500.00 on November 5, 2006, this induced

16  me to follow through with the "equity-share" program.

17      In November the sale of my condo fell through and I chose

18  to withdraw from selling my condo.   I was told it was too far

19  and they did not have buyers who could qualify.

20      In December I called Roslyn Ruiz of North American Title

21  and told her I wanted to withdraw my purchase of the property in

22  Brentwood, the "equity-share" property.   On December 12, 2006

23  Carol Ann Dickson and Tara Brown called and encouraged me to

24  continue with the signing.   Tara Brown told me that if I did not

25  sign the escrow papers that K Platinum would seek damages and

LAW
OFFICES
OF
GOFORTH
& LUCAS

*DECLARATION OF PLAINTIFF CHARI OGOGO IN SUPPORT OF MOTION FOR APPOINTMENT
OF RECEIVER [JOINDER]*                                                    5

sue me for the delay. At that time, my $70,000.00 was still in K Platinum hands and I had not received my December payment. I was coerced into signing and fearful that my money would not be returned.

**What Changes occurred at K Platinum in November and December?**

- ◆ Prosperity Matters became Power of Seven
- ◆ Jorie Wright became the Chief Financial Officer
- ◆ Tara Brown was the manager for the Equity Share Program
- ◆ Heidi Locorceo was the Director of Equity Share Program
- ◆ Susan Beck was the Director of Power of Seven (cash on Cash program)
- ◆ Jason Pierre became the contact for receiving the money for Power of Seven
- ◆ Special Investor meeting held in December that changed the payout and the term of the return
- ◆ December bounced checks sent to investors on closed accounts
- ◆ K Platinum offices closed for reorganization in December.

**The effects of K Platinum Deception.**

The mortgage industry has changed drastically and now the victim investors are left with properties that have high-interest rate mortgages and over-inflated home appraisals. High pressure sales tactics for properties that were touted as safe investments are now facing foreclosure. This will create a blight on properties in Brentwood.

The sales information was misleading and the property values were exaggerated by K Platinum. K Platinum used deception in the closing statements through the escrow companies to hide that the homes were overpriced and took all the equity

1  out of the properties.   K Platinum is now washing its hands as

2  the management entity and stating to the victim investors who

3  are now responsible for all payments.

4      **EXHIBIT LIST**

5      **Attached   are   the   following   exhibits   which   support   my**

6  **testimony:**

7      **Exhibit A: Real Property**

8      **Exhibit B: "Cash-on-cash"**

9      **Exhibit C: Equity Share**

10      I declare under penalty of perjury of the laws of the State

11  of California that the foregoing is true and correct except as

12  to those matters alleged upon information and belief, and as to

13  such matters, I believe them to be true and correct.

14      Executed    this    _____31_____    day,   May   2007   at

15  City: _Concord_____    State: _CA_____

16

17                          _Chari Jarmer Ogogo_____

18                          Plaintiffs CHARI OGOGO

19

20

21

22

23

24

25

LAW
OFFICES
OF
GOFORTH
& LUCAS

*Form*

V. Elizabeth Grayson
California SB# 122611
888 Seventh Avenue – 45th Floor
New York, N.Y. 10106
Tel.: (646) 406-1512

Attorney for Plaintiff
Charmaine Bennett

IN THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF CONTRA COSTA

```
-------------------------------------------------x
                                                 :    Case No. MSC07-01075
Charmaine Bennett,                               :    Coordinated with Case Nos.
                                                 :    MSC07-00049, MSC07-00080,
                Plaintiff,                       :    MSC07-00106, MSC07-00454,
                                                 :    MSC07-00483, MSC07-00484,
        vs.                                      :    MSC07-00485, MCC07-00486
                                                 :
K Platinum Group, Inc., K. Platinum International:    NOTICE OF MOTION AND
Associates, Inc., K. Platinum International Group,:   MOTION FOR APPOINTMENT
Inc., K. Platinum Realty Inc., K. Platinum       :    OF RECEIVER; MEMORANDUM
Associates, Inc., K. Platinum Financial Inc.,    :    OF POINTS AND AUTHORITIES,
Performance Finance, Insurance and               :    GRAYSON DECLARATION,
Consulting, LLC, T.J. Pantaleao, Len Quick,      :    REQUEST FOR JUDICIAL
Kanya Coleman, Jorie Wright,                     :    NOTICE
New York Life Insurance Company,                 :
CRES Insurances Services, LLC, and               :
Does One Through Ten,                            :
                                                 :
                Defendants.                      :
-------------------------------------------------x
```

TO ALL COUNSEL IN THE ABOVE CAPTIONED ACTION AND THE LISTED
COORDINATED ACTIONS:

PLEASE TAKE NOTICE THAT ON FRIDAY, JUNE 1, 2007 AT 9 A.M., IN

DEPARMENT SIX OF THE CONTRA COSTA SUPERIOR COURT, 725 COURT STREET,

MARTINEZ, CALIFORNIA, THE HONORABLE DAVID B. FLINN PRESIDING.

PLAINTIFF CHARMAINE BENNETT, THROUGH HER COUNSEL VIOLET ELIZABETH

GRAYSON, WILL MOVE THE COURT FOR AN ORDER APPOINTING A RECEIVER TO

TAKE CONTROL OF EACH AND ALL OF THE "K-PLATINUM" COMPANIES LISTED IN

Motion for Appointment of Receiver

1

THE PRECEDING CAPTION. SAID MOTION WILL BE BASED UPON: 1) THIS NOTICE,

2) THE VERIFIED COMPLAINT IN THIS ACTION AND THE COMPLETE FILES IN ALL

OF THE COORDINATED ACTIONS (OF WHICH THE COURT IS REQUESTED TO TAKE

JUDICIAL NOTICE), 3) THE DECLARATION OF VIOLET ELIZABETH GRAYSON, 4)

THE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION, AND

5) THE PROPOSED ORDER WHICH ACCOMPANIES THIS APPLICATION FOR RELIEF.

PURSUANT TO THE COURT'S ORAL ORDER OF MAY 24, 2007, RESPONSIVE PAPERS

MUST BE SERVED AND FILED NO LATER THAN FIVE P.M. ON JUNE 30, 2007.

Respectfully submitted,


_____
V. Elizabeth Grayson
Attorney for Plaintiff
Charmaine Bennett

Motion for Appointment of Receiver

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

<u>APPOINTMENT OF RECEIVER</u>

I.

<u>Introduction</u>

Plaintiff, Charmaine Bennett hereby moves the Court to appoint a receiver to take control of corporate defendants K Platinum Group, Inc., K Platinum International Associates, Inc., K. Platinum International Group Inc., K. Platinum Realty, Inc., K. Platinum Associates Inc., K. Platinum Financial Inc., and any wholly owed subsidiary of said companies (hereafter the "K Platinum Companies"). As demonstrated below, appointment of a receiver is authorized by California statute and case law, and necessary to muster and preserve some fund out of which to compensate the plaintiffs in the coordinated actions listed above.

<u>Applicable Law</u>

The circumstances under which California law authorizes appointment of a receiver are set forth in California Code of Civil Procedure section 564 subdivision (b), which provides in pertinent part:

A receiver may be appointed by the Court in which an action or proceeding is pending , or by a judge thereof, in the following causes:

(1) . . . by a creditor to subject any property or fund to the creditor's claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

\* \* \* \* \* \* \*

(6) Where a corporation is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

\* \* \* \* \* \* \*

(9) In all other cases where necessary to preserve the property or rights of any party.

Receivership is a proper remedy to prevent a sole shareholder from withdrawing earnings from a corporation. (*Crocker National Bank v. O'Donnell* (1981) 115 Cal.App.3d 264). Appointment of a receiver is within the sound discretion of the trial court, and the court may confer upon the receiver broad powers including the power to dissolve the corporation or to sell its real property. (*Gold v. Gold Realty* (2003) 114 Cal.App. 4th 791) Availability of a less drastic remedy does not, in itself, preclude appointment of a receiver. (*San Francisco v. Daly* (1993) 16 Cal.App.4[th] 734)

II.

The Facts of This Case Justify Appointment of A Receiver Under the Foregoing Law

As demonstrated by the Verified Complaint of Charmaine Bennett, and the files in all of the coordinated cases, the plaintiffs herein are persons holding promissory notes from the K Platinum Companies. The K Platinum Companies have defaulted on their payments under the promissory notes. It is abundantly clear that the K Platinum Companies and their officers have diverted and squandered plaintiffs' monies. According to K Platinum Group Inc.'s own unaudited balances sheet for 2006, appended to the Defendants' Report Re Reorganization of K. Platinum Group, Inc. as Exhibit A, K Platinum Group took in $8.5 million in 2006, $6 million of which was borrowed from individuals in exchange for promissory notes. Yet K Platinum Group is now insolvent. As explained in the foregoing Report re Reorganization: "At present, unless reorganization is achieved, K Platinum will exhaust its working monetary capital within 30 days." Where did the $8.5 million go? According to the balance sheet, half a million dollars were loaned to officers and another $4 million loaned to affiliates. This leaves $4

million unaccounted for. Moreover, whether the $4 million loaned to affiliates is still on deposit as cash in the affiliates or has been otherwise dissipated – perhaps as loans to the affiliates' officers – is an interesting question.

Whatever else may be the case, we know that Kanya Coleman is secreting assets. Plaintiff Bennett's counsel's review of Contra Costa County Recorder's Office records reveals that on January 3, 2007, Kanya Coleman created The Blue Sky Living Trust, of which she is both beneficiary and trustee, and deeded three parcels of real estate which she owned personally to said trust. On February 26, 2007, shortly after the Federal Bureau of Investigation raided the K Platinum Company Offices, the three quitclaim deeds were recorded and mailed to attorney Christopher Pham. (Grayson Declaration, paragraph 3)

Applying the foregoing law to the facts of this case, it is plain that this Court is authorized by statute to appoint a receiver for the K Platinum Companies. The promissory note holding plaintiffs are creditors who seek to subject property and funds to their claims, within the meaning of Code of Civil Procedure section 564(b)(1). They are also parties "whose right to or interest in the property of fund, or the proceeds thereof, is probable . . . where it is shown that the property or fund is in danger of being lost, removed or materially injured," also within the meaning of Code of Civil Procedure section 564(b)(1). Plaintiffs further qualify for appointment of a receiver because the K Platinum Companies are in "imminent danger of insolvency" within the meaning of Code of Civil Procedure section 564(b)(6). Finally, appointment of a receiver is proper under Code of Civil Procedure section 564(b)(9), which provides for such appointment "In all other cases where necessary to preserve the property or rights of any party."

Plaintiff's proposal for scope of the receivership and directions to the receiver are set forth with precision in the Proposed Order which accompanies this motion. Suffice it to say that a receiver is necessary to identify all assets of the debtor K Platinum Companies, retrieve assets which have been loaned to officers and affiliates, prevent further disbursal of assets, and otherwise muster the assets for plaintiffs' benefit. A receiver is also necessary to consult bankruptcy counsel and determine whether a bankruptcy filing on behalf of any of the K Platinum Companies is needed to avoid preferential transfers, and whether an involuntary bankruptcy proceedings should be initiated with respect to Kanya Coleman personally.

A receiver should therefore be appointed forthwith.

### III.

### No Bond Should Be Required Of Plaintiff Charmaine Bennett and Bennett Should Not Be Liable for the Receiver's Fees

Plaintiff Charmaine Bennett is simply one of many promissory note holders whose note was dishonored by the defendants herein. As set forth in her verified complaint, she is a retiree who loaned her entire life savings to the K Platinum defendants. As Bennett's counsel volunteered to take the laboring oar in seeking appointment of a receiver for the benefit of all note holders, Bennett individually should not be punished by the court requiring her to post a bond or become liable for the receiver's fees. The court should nor require any plaintiff to post a bond in connection with appointment of the receiver, and the receiver should be required to recover his fees from the K Platinum Companies and their officers only.

Motion for Appointment of Receiver

## Conclusion

Appointment of a receiver is authorized by law and necessary to muster and preserve assets for the benefit of all plaintiffs. A receiver should be appointed forthwith.

Respectfully submitted,

_____

V. Elizabeth Grayson
Counsel for Plaintiff
Charmaine Bennett

<u>Declaration of V. Elizabeth Grayson</u>

I, V. Elizabeth Grayson declare:

1. I am a member of the bar of this court and counsel of record for plaintiff Charmaine Bennett. I make this Declaration is support of Ms. Bennett's Motion for Appointment of a Receiver.

2. My investigation in connection with this case leads me to believe that Kanya Coleman and her fellow K Platinum Officers have solicited funds from the public in exchange for promissory notes, and then diverted said funds to their own use. As recently as the fourth quarter of 2006, the K Platinum defendants solicited and received more than a quarter of a million dollars from my client, Charmaine Bennett. Yet in the first quarter of 2007, counsel for these companies wrote to Ms. Bennett and her fellow note holders stating that the terms of the notes would not be honored.

3. My investigation of records on file at the Contra Costa County Recorder's Office revealed that on January 3, 2007, Ms. Coleman established The Blue Sky Living Trust, of which she was both beneficiary and trustee, and deeded three parcels of property from herself personally to the trust. On February 26, 2007, the grant deeds were recorded and mailed to attorney Christopher Pham. I believe that the purpose of these transfers was to defraud Coleman's creditors, including the promissory note holders who are the plaintiffs in the coordinated actions. I will bring copies of the three grant deeds with me to the hearing now set for June 1, 2007.

4. The financial information contained in the defendants' recently filed Report re Reorganization not only offers me no comfort but actually confirms my belief that Ms. Coleman and her fellow corporate officers have misappropriated the money borrowed

from the plaintiffs in the coordinated actions. This document, and Exhibit A thereto, reflects that K Platinum Inc. took in $8.5 million during 2006. Half a million dollars were loaned to corporate officers, $4 million were loaned to affiliates, and $4 million are missing. According to the Report, dated May 17, 2007, the K Platinum Companies would become completely insolvent within 30 days.

5. There is simply no innocent explanation for the foregoing state of affairs. Immediate appointment of a receiver is necessary to ensure that what little money is left in the corporate coffers is not dissipated, and that as much money as possible stolen from the corporate coffers is recovered. One or more bankruptcy filings may be necessary to optimize recovery for all note holders by voiding preferential transfers.

6. For the foregoing reasons, I urge this Court to grant Charmaine Bennett's motion for appointment of receiver, and to select a receiver known by the Court to be ready, willing and able to so serve. I further note that Jesse C. Ralph, counsel for plaintiff Jimmie T. Braden, Sr., in case number MSC07-00454 joins in this motion.

The foregoing facts are true and correct of my personal knowledge. This declaration was executed under penalty of perjury in San Francisco, California on May 27, 2007.

_____

V. Elizabeth Grayson

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Request for Judicial Notice</u>

Plaintiff Charmaine Bennett respectfully requests that this Court take judicial notice of its own file in the instant case, and in coordinated cases, Nos. MSC07-00049, MSC07-00080, MSC07-106, MSC07-00454, MSC07-00483, MSC07-00484, MSC07-00485, and MSC07-000486.

Respectfully submitted.

_____

V. Elizabeth Grayson

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )

                             ) ss.

COUNTY OF SAN FRANCISCO       )

        I, V. Elizabeth Grayson, am over 18 years of age and not a party to the within

lawsuit; my business address is: 888 Seventh Avenue – 45th Floor, New York, N.Y. 10106.

On May 27, 2007, I served the foregoing Motion for Appointment of Receiver, by e-

mailing true copies to the following counsel:

1) Marc Terbeek (marc@mehlman-terbeek.com);

2) Christopher Pham (cpham@gareebpham.com);

3) Jesse C. Ralph (sec58@earthlink.net);

4) Ronald W. Carter (rwcesq1@aol.com);

5) Michael D. Goforth (mdg@goforthlucas.com)

6) Robert J. Scott, Jr. (robert@schwartz-cera.com)

And by mailing via first class mail to the following:

1)David L. Roth (One Kaiser Plaza, Suite 601, Oakland, CA 94501);

2) Terrance W. Andrews (3150 Hilltop Mall Rd., Richmond, CA 94806)

3) Scott Clarkson (Clarkson, Gore & Marsell, 3424 Carson Street, Suite 350, Torrance

CA 90503).

4) Newell Walker (160 Delgado Court, Vallejo, CA 94591)

        I declare under penalty of perjury of the laws of State of California and the

United States that the foregoing is true, and that this declaration was executed on

May 27, 2007, in San Francisco, California.


                                    _____

                                    V. Elizabeth Grayson


Motion for Appointment of Receiver

11