**EXHIBIT 7**

1  JEANINE K. CLASEN, Counsel (SBN 164404)
   Department of Real Estate
2  P. O. Box 187007
   Sacramento, CA  95818-7007
3
4  Telephone:   (916) 227-0789
         -or-  (916) 227-0868 (Direct)
5



FILED
APR 16 2007
DEPARTMENT OF REAL ESTATE
By_____

6
7
8
9              BEFORE THE DEPARTMENT OF REAL ESTATE
10                      STATE OF CALIFORNIA
11                            * * *
12 In the Matter of the Accusation of  )
                                       )   No. H-9977 SF
13      K PLATINUM GROUP, INC. and     )
        KANYA TENNYSHA COLEMAN,        )   ACCUSATION
14                                     )
                  Respondents.         )
15
16      The Complainant, E.J. HABERER II, a Deputy Real Estate
17 Commissioner of the State of California, for cause of Accusation
18 against K PLATINUM GROUP, INC. ("KPG") and KANYA TENNYSHA
19 COLEMAN ("COLEMAN"), collectively herein "Respondents," is
20 informed and alleges as follows:
21                             I
22      The Complainant, E.J. HABERER II, a Deputy Real Estate
23 Commissioner of the State of California, makes this Accusation
24 in his official capacity.
25                             II
26      At all times herein mentioned, Respondents were and
27 now are presently licensed and/or have license rights under the

- 1 -

Real Estate Law, Part 1 of Division 4 of the Business and Professions Code (herein "the Code").

### III

At all times herein mentioned, COLEMAN owned, managed, supervised and controlled the activities of KPG, a corporation doing business in the State of California and engaged in the business of investing in real estate and/or real estate securities.

### IV

At all times herein mentioned, KPG was and now is licensed by the Department of Real Estate of the State of California (herein "the Department") as a corporate real estate broker by and through COLEMAN as designated broker-officer of KPG to qualify said corporation and to act for said corporation as a real estate broker.

### V

At all times herein mentioned, COLEMAN was and now is licensed by the Department as a real estate broker, individually and as designated broker-officer of KPG. As said designated broker-officer, COLEMAN was responsible pursuant to Section 10159.2 of the Code for the supervision of the activities and representations of the officers, agents, real estate licensees and employees of KPG.

### VI

Whenever reference is made herein to an act or omission of KPG, such allegation shall be deemed to mean that officers, directors, employees, and/or agents of KPG committed

- 2 -

such act or omission while engaged in the furtherance of the business or operations of KPG and/or COLEMAN while acting within the course and scope of their authority and employment.

VII

Beginning on or about March 1, 2006 and continuing through on or about February 1, 2007, Respondents advertised, solicited, negotiated, obtained and/or accepted investment funds from members of the general public (herein collectively "Investors"), for purported investments through certain programs which were created, advertised, operated and controlled by Respondents, including the "Cash-on-Cash" program and the "Power of Seven" program (herein collectively "Investment Programs"), the essential terms of which are described below:

(a) Under the Cash-on-Cash program, Investors paid a minimum of $25,000 (cash or cashier's check) to KPG in exchange for promissory notes pursuant to which KPG promised to pay the investor a return of 25% of the invested principal over "the lifetime of the investment" with KPG, with each investor promised the right to a refund of the principal investment upon 30 days' written notice.

(b) Under the Power of Seven program, Investors executed written agreements with KPG and a California limited partnership known as "Power of Seven Loan-Fund One Limited Partnership" ("POS-LP"), pursuant to which each Investor paid a minimum of $25,000 (cash or cashier's check), to KPG in exchange for one or more "units" of interest in POS-LP,

- 3 -

in exchange for one or more "units" of interest in POS-LP, pursuant to a written agreement promising that the Investor would receive a monthly disbursement of $6,250 per "unit" of interest for a period of 7 months.

VIII

Between on or about March 1, 2006 and on or about February 1, 2007, Respondents solicited and obtained funds from approximately 398 Investors for investment in the above-described Investment Programs, including the following persons: Chari Farmer-Ogogo on behalf of the "High IQ For Kids" organization ("OGOGO"); Autar Johal and Amree Johal ("JOHAL"); and Daniel B. Stephens and Doris Stephens ("STEPHENS").

IX

In soliciting, negotiating and obtaining investments in the Investment Programs described above, including investments from the persons identified in Paragraph IX, above, Respondents made the following material representations of fact:

(a) that each Investor would receive a monthly disbursement from Respondents in the amount of 25% of his or her invested principal;

(b) that, after January 1, 2007, the Cash on Cash program would be "restructured" and Investors would receive new promissory notes;

(c) that upon 30 days' written notice, Investors in the Investment Programs could obtain a refund of their undistributed investment principal;

///

(d) That funds invested in the Investment Programs were at all times "insured and guaranteed" by New York Life Insurance Company.

X

At all times mentioned herein, each and every representation described in Paragraph IX, above, were false when made, as Respondents well and truly knew at the time Respondents made each such representations. In truth and fact:

(a) Respondents never intended to pay all of the promised monthly disbursements to Investors in the Investment Programs;

(b) Respondents never intended to provide new promissory notes to the Cash on Cash Investors after January 1, 2007;

(c) Respondents never intended to refund any Investor's undistributed investment principal if requested by the Investor;

(d) Funds invested in the Investment Programs were never "insured or guaranteed" by New York Life Insurance, or any other insurance carrier;

XI

The following Investors reasonably relied upon Respondents' material misrepresentations described in Paragraph IX, above, in paying funds to Respondents for investment in the Investment Programs, and were harmed thereby, as set forth below:

(a) Between September 2006 and October 2006, OGOGO paid $70,000 to Respondents for investment in the Cash on Cash

- 5 -

1  Program. From December 2006 and continuing through the
2  present, Respondents have failed and refused to make any
3  of the promised disbursements to OGOGO, refused to
4  communicate directly with OGOGO and failed and refused to
5  refund any of OGOGO's undistributed, invested principal.
6  (b)  On or about October 2006, JOHAL paid $100,000 to
7  Respondents for investment in the Power of Seven program.
8  From December 2006 and continuing through the present,
9  Respondents have failed and refused to make any of the
10 promised disbursements to JOHAL, refused to communicate
11 directly with JOHAL and failed and refused to refund any
12 of JOHAL'S undistributed, invested principal.
13 (c)  On or about August 2006, STEPHENS paid $25,000 to
14 Respondents for investment in the Cash on Cash program.
15 From December 2006 and continuing through the present,
16 Respondents have failed and refused to make any of the
17 promised disbursements to STEPHENS, refused to communicate
18 directly with STEPHENS or refund any of STEPHENS'
19 undistributed, invested principal.

                                XII

21     Respondents' acts and omissions, as alleged in
22 paragraphs VIII through XI, above, constitute fraud and
23 dishonest dealing.
24 ///
25 ///
26 ///
27 ///

- 6 -

## XIII

Respondents acts and omissions, as alleged in Paragraphs VIII through XI, above, are grounds for the suspension or revocation of all licenses and license rights of Respondents COLEMAN and KPG under Sections 10177(j) of the Code.

WHEREFORE, Complainant prays that a hearing be conducted on the allegations of this Accusation and that upon proof thereof, a Decision be rendered imposing disciplinary action against all licenses and license rights of Respondents under the Code, and for such other and further relief as may be proper under provisions of law.

E.J. HABERER II
Deputy Real Estate Commissioner

Dated at Sacramento, California this 12th day of April, 2007.

- 7 -