1  DOUGLAS R. SCHWARTZ (State Bar No. 98666)
   ROBERT J. SCOTT, Jr. (State Bar No. 151775)
2  SCHWARTZ & CERA LLP
   44 Montgomery Street, Suite 3850
3  San Francisco, California 94104
   Telephone: (415) 956-2600
4  Facsimile: (415) 438-2655

5  Attorneys for Plaintiff
   BRUCE SARUBIN

**FILED**
2007 JAN -5 P 2:01

IN THE SUPERIOR COURT

IN AND FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| BRUCE SARUBIN, an individual, | CASE NO. **C07-00049** |
| vs. | COMPLAINT FOR RESCISSION, FRAUD, NEGLIGENT MISREPRESENTATION, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, CONVERSION |
| K PLATINUM GROUP, INC. a California Corporation; K PLATINUM INTERNATIONAL GROUP, INC. a California Corporation; K PLATINUM ASSOCIATES, INC., a California Corporation; K PLATINUM INTERNATIONAL ASSOCIATES, INC., a California Corporation; K PLATINUM FINANCIAL, INC., a California Corporation; K PLATINUM INTERNATIONAL FINANCIAL, INC., a California Corporation; K PLATINUM REALTY, INC., A California Corporation; K PLATINUM INTERNATIONAL REALTY, INC., A California Corporation; Kanya Tennysha Coleman, an individual, and DOES 1 through 100, inclusive, | |
| Defendants. | |

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT _____

1
COMPLAINT

1  COMES NOW Plaintiff BRUCE SARUBIN and alleges against defendants and each
2  of them as follows:
3  1. Plaintiff Bruce Sarubin ("Sarubin") is an individual and a resident of Pleasanton,
4  California.
5  2. Defendant Kanya Tennysha Coleman ("Coleman") is an individual who, on
6  information and belief, resides in the city of Pleasanton, California. Coleman is the founder,
7  principal owner and president and/or chief executive officer of the "K Platinum" corporate
8  defendants named herein.
9  3. Defendant K Platinum Associates, Inc. is a California Corporation with its
10  principal place of business at 4185 Blackhawk Plaza Circle, Suite 200, Danville, California.
11  4. Defendant K Platinum International Associates, Inc. is a California Corporation
12  with its principal place of business at 1910 Olympic Boulevard, Suite 150, Walnut Creek,
13  California.
14  5. Defendant K Platinum Financial, Inc. is a California Corporation with its principal
15  place of business at 1910 Olympic Boulevard, Suite 160, Walnut Creek, California.
16  6. Defendant K Platinum International Financial, Inc. is a California Corporation
17  with its principal place of business at 1910 Olympic Boulevard, Suite 150, Walnut Creek,
18  California
19  7. Defendant K Platinum Group, Inc. is a California Corporation with its principal
20  place of business at 1910 Olympic Boulevard, Suite 151, Walnut Creek, California.
21  8. Defendant K Platinum International Group, Inc. is a California Corporation with
22  its principal place of business at 1910 Olympic Boulevard, Suite 150, 160, Walnut Creek,
23  California.
24  9. Defendant K Platinum Realty, Inc. is a California Corporation with its principal
25  place of business at 1910 Olympic Boulevard, Suite 150, Walnut Creek, California.
26  10. Defendant K Platinum International Realty, Inc. is a California Corporation with
27  its principal place of business at 5100 LB Clayton Valley Road PMB 131, Concord,
28  California.

11. The true names and capacities of defendants sued as Does 1 through 100, inclusive, are unknown to Sarubin, who sues these defendants by such fictitious names. Sarubin will seek leave to amend this complaint to show their true names and capacities when the same have been ascertained. Sarubin is informed and believes and thereon alleges that each of these Defendants designated herein as a Doe was in some manner responsible for the occurrences alleged in this Complaint and proximately caused damages to Sarubin.

12. At all times, the defendants, and each of them, were the agents and/or co-conspirators of each of the other defendants. In performing each of the acts alleged herein, the defendants, and each of them, were acting in their respective capacities as agents and co-conspirators of each of the other defendants herein.

## GENERAL ALLEGATIONS

13. Bruce Sarubin is a Sales Engineer with Trane in Sunnyvale. He and his wife of seventeen years, Lisa, have two children ages 9 and 14. Seven years ago Lisa Sarubin was diagnosed with colon/rectal cancer. Lisa's cancer has now metastasized. Potentially life-saving treatments for Lisa's condition are extremely expensive. As a consequence, Bruce was and is motivated to aggressively pursue investments and seek ways to maximize the funds the family has for treatments that offer the hope of extending the life of his wife and his children's mother.

14. Coleman is and has been, since approximately 2000, a broker licensed by the California Department of Real Estate. In 2003, Coleman established "her own Corporations"[1] known as K Platinum Associates, K Platinum Financial, and K Platinum Group. On information and belief, the various "K Platinum International" entities were formed in September, 2006, in furtherance of the scheme to defraud investors set forth in this complaint.

15. On information and belief, Coleman at all times acted as the alter ego of each of the K Platinum entities, co-mingling funds, eschewing corporate formalities, and acting as

---

[1] Quoted from Coleman's biography on www.kplatinumrealty.com/about.html.

1 though there was never any distinction between herself and the corporations that she owned
2 and operated. As such, the separate personalities of Coleman and the K Platinum defendants
3 never, at any relevant time, existed. To allow Coleman to shield her fraudulent activities
4 behind the artifice of "her own Corporations" would constitute a fraud on the public in
5 general and specifically the plaintiff herein. The court should allow Sarubin to pierce the
6 corporate veil and reach the personal assets of Coleman in order to satisfy any judgment
7 obtained herein against the K Platinum defendants.

8     16. Throughout most of 2006, K Platinum, acting under the pseudonym
9 "Prosperity Matters," sponsored presentations at the Walnut Creek Marriot Hotel on Tuesday
10 nights at 6:30 p.m. At these presentations, it introduced prospective investors to, *inter alia*,
11 the "Cash on Cash Investment Program." An early flier for the Cash on Cash Program
12 described it as follows:

> When you invest a minimum of $25,000 in K Platinum Group (KPG), you will receive a return of 15% monthly for as long as your investment stays with KPG. For example, if you were to invest $30k, you would receive $4,500 per month. In just over 6 months you will have received your initial investment back, and in just one year, your investment will have nearly doubled. (Exh. A.)

18     17. In approximately fall of 2006, K Platinum began to promote the Cash on Cash
19 Program under slightly different rubric, promising "Cash Investment Partners" a higher
20 return:

> This program is designed for investors who desire a significant return on their investment with a monthly disbursement. As a Cash Investment Partner, your investment of $25,000 or more results in a 75% return, on your investment, paid at 25% monthly for seven months (1st return after 45 days, subsequent return every 30 days). Your cash investment is the foundation of our Equity Share Program, allowing credit worthy partners to become real estate investors with no money down – creating a community of real estate investors and helping families in your community achieve a new level of prosperity through home ownership. (Exh. B.)

27     18. K Platinum advised prospective investors that to open a new account, they
28 should provide "a *cashiers' check* made to K Platinum International." (Exh. C) (italics

Case 3:07-cv-03269-MJJ   Document 25-4   Filed 08/14/2007   Page 5 of 13

supplied, emphasis in bold added). Additionally, K Platinum represented to potential investors that they could withdraw all of their principal funds on 30 (thirty) days notice (Exh. A, C), and that investors should not be concerned if they do not receive a promissory note signed by the K Platinum CEO (i.e., Coleman), explaining that the "CEO is often traveling, and signs the promissory notes in large batches." (Exh. C.)

19. In September, 2006, Sarubin attended one of K Platinum's presentations at the Walnut Creek Marriott to learn about the Cash on Cash Investment Program. Approximately 200 other people were in attendance, from outward appearances the other attendees tended to be heavily blue collar. During the presentation, Coleman boasted of her reputation within the real estate industry and claimed that she used a team of outside consultants and professionals to develop the Cash on Cash Investment Program, including famed self-help guru Anthony Robbins, New York Life and Yvonne Gamble of Real Life Consulting. Coleman further claimed to have spent two weeks at the home of Anthony Robbins developing the Cash on Cash Investment Program, thereby suggesting that the program bore Robbins' attestation.

20. The program, as outlined in paragraphs 15 and 16 above, was presented to Sarubin at the Marriott. Additionally, Coleman represented that the investments were "backed by New York Life."

21. Unconvinced, Sarubin met with one of K Platinum's agents, Mr. Lee Mallory. Sarubin explained the dire situation his wife and family were in and, to emphasize his seriousness, showed Mallory a cashiers' check payable to K Platinum in the amount of $350,000. Sarubin asked Mallory if he could look Sarubin in the eye, in view of all of Sarubin's family circumstances, and tell Sarubin that the Cash on Cash Investment Program was all that it was cracked up to be. Mallory suggested that Sarubin, to put his mind at ease, should meet personally with Kanya Coleman and Susan Beck.

22. Both Bruce and Lisa Sarubin met with Coleman and "Prosperity Matters" program director Susan Beck at the K Platinum offices on Olympic Boulevard in Walnut Creek during the first week of November, 2006. Again, Sarubin explained the grave

5
COMPLAINT

1  circumstances confronting his wife and family. Sarubin emphasized that if this was not the
2  right time to go forward with the Cash on Cash Investment Program, then he could wait.
3  Coleman personally assured Bruce and Linda Sarubin that the investment was safe and that
4  the Cash on Cash Investment Program was a *bona fide* program. Coleman specifically
5  represented that Sarubin's principal was "100% safe" and that the Cash on Cash Program
6  was the safest investment in her company.
7         23.   On November 17, 2006, Bruce Sarubin met with K Platinum Investor
8  Relations Associate Toccara Wise. Sarubin signed a "7-Month Investment Representation
9  Letter" on which Ms. Wise acknowledged receipt of $300,000 "for a potential return sum
10 of 25% monthly, for a period of seven months, . . . ." Ms. Wise modified the representation
11 letter by interlineating that Sarubin's first interest payment would be 30%. (Exh. D.)
12        24.   On November 17, 2006 Sarubin also signed a Promissory Note with K
13 Platinum. In relevant part, the Promissory Note recites:

> For value received, K Platinum Group, Inc., hereby covenants and promises to pay *Bruce Sarubin* (Investor) *Three Hundred Thousand Dollars ($300,000.00)* in lawful money of the United States of America, together with interest thereon computed from the date hereof a the rate of twenty five percent (25%) for seven (7) months. (Exh. E, page 1, 1st paragraph.)

19        25.   The Promissory Note additionally provided that the note would be paid in
20 75,000 monthly installments beginning on January 19, 2007 and continuing to June 17,
21 2007. Sarubin did not notice at the time that this constituted only **six** months of payments.
22 Pursuant to the note, Sarubin had the right to "pull any invested fund (sic) at any time
23 without penalty, given that there is 30 days written notice."
24        26.   The Promissory Note bears the following legend at the top of the signature
25 (second) page:

> This Agreement serves as a "promissory note." This note is good for seven months "return" of 25% monthly. Investment principle (sic) is insured and guaranteed by New York Life Insurance Company.

28        27.   Shortly before Christmas, Sarubin heard from a family friend who is also

1 invested with K Platinum that the company was in financial trouble. Sarubin's phone calls to K Platinum offices and personnel went unanswered. Through other investors, Sarubin learned that an individual named Edwin "Jerry" Heath had expressed an interest in purchasing the company at a K Platinum meeting held on or about December 22, 2006. Sarubin called Jerry Heath on December 26, 2006 and Heath confirmed that he was interested in K Platinum but that the Cash on Cash Investment Program was a "big problem." Heath planned to call meetings with investors shortly to discuss the problems with the program.

28. On December 29, 2006 Sarubin received a certified letter from K Platinum addressed to "Investors" in the K Platinum Cash-on-Cash Program. The letter was undated and signed by Jorie Wright as President of K Platinum Group. In relevant part, the letter stated that:

> Some of you may have heard of a purchase offer and pending change of leadership. This is true and in progress. Effective immediately, K Platinum Group and its companies are no longer operating under the direction of Kanya Coleman. **During the time we are restructuring, we will not be sending payments to our cash-on-cash investors.**

(Exh. F, emphasis added.)

29. On December 30, 2006, Sarubin attended a meeting at K Platinum's Olympic Boulevard, Walnut Creek offices with several other investors. Heath was present at the meeting with Susan Beck on behalf of K Platinum. Sarubin asked if the investors could just assume that their investments were gone. Heath stated that that would be "a good starting point." Moreover, Heath stated that any attempt to sue K Platinum to recover the investments would simply result in K Platinum filing bankruptcy in which case the investors would get nothing. The investors were told that K Platinum had approximately $4 million in assets but $18 million in liabilities. K Platinum neither promised to repay the entire principal to its investors nor explained how such repayment could take place.

## FIRST CAUSE OF ACTION

### (Rescission)

30. Sarubin incorporates by reference each and every allegation contained in

paragraphs 1 through 29, above, as though fully set forth herein.

31. Defendant's representations that the Cash on Cash Investment Program was safe and that the principal was insured by New York Life Insurance Company were false when made. When Sarubin contacted New York Life, a New York Life business agent, Mr. Rob Ferguson, told Sarubin that the investment principal was not insured and guaranteed by New York Life Insurance Company. The false representations were made with the intent to induce Sarubin to rely on them, and Sarubin, not knowing the representations to be false, did in fact rely on the said representations in providing funds as stated herein.

32. On December 27, 2006, Mr. Sarubin's counsel sent a notice of rescission to K Platinum. (Exh. G.) In relevant part, the letter states:

> On behalf of Mr. Sarubin, we hereby demand rescission of the promissory note based on the aforementioned misrepresentations of material fact. Mr. Sarubin agrees to release K Platinum from any obligation to pay any interest on the note in exchange for the **prompt** return of his principal investment of $300,000.

As of the date of this filing, there has been no response to this demand.

33. Defendants' misrepresentations of material fact entitle Sarubin to rescind the Promissory Note. Sarubin hereby offers to release Defendants from any obligation to pay any interest on the note in exchange for the prompt return of his principal investment of $300,000.

34. Wherefore, plaintiff prays for judgment as more fully set forth below.

### SECOND CAUSE OF ACTION
### (Fraud)

35. Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 34, above, as though fully set forth herein.

36. The representation on the promissory note that the principal investment was secured by New York Life Insurance Company was false when made by Defendants, who had knowledge of its falsity. The representation was made with the intent to induce Investors such as Sarubin to rely on it in entering into the Promissory Notes for the Cash on Cash Investment Program. Sarubin in fact relied upon the representation in agreeing to

1  enter into the Promissory Note.

2      37.   Coleman, in a meeting with Lisa and Bruce Sarubin that was also attended by Susan Beck, during the first week of November 2006, while fully aware of the grave circumstances confronting the Sarubin family and their need to obtain funds to provide medical care for Lisa Sarubin's cancer, represented to the Sarubins that their investment in the Cash on Cash program was safe and that there was no chance that they could lose their money if they invested in the program. These representations were false when made and Coleman was aware of their falsity. The representations were made with the intent to induce Sarubin to rely upon them and enter into the Cash on Cash Investment Program and Sarubin did in fact rely upon Coleman's representations in agreeing to enter into the Promissory Note.

12     38.   As a result of defendants' fraud, Sarubin has suffered extreme emotional distress, worry, anxiety and injury as he has lost the ability to obtain cutting edge medical care for his sick and dying wife and has been forced to watch his wife's health deteriorate as a result of her learning of the defendants' fraud. Sarubin has suffered general and special damages in excess of $1,000,000.

17     39.   The actions of defendants as set forth herein were fraudulent, malicious, oppressive, and taken in conscious disregard of the rights of Sarubin. Punitive damages should be imposed upon the defendants, and each of them, to make an example of said defendants and to deter such conduct in the future.

21     40.   Wherefore, Sarubin prays for judgment as more fully set forth below.

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

24     41.   Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 40, above, as though fully set forth herein.

26     42.   When defendants made the statements as set forth above in paragraphs 36 and 37, the statements were untrue and defendants had no reasonable grounds to believe that the statements were true. The representations were made with the intent to induce Sarubin to

rely upon them and enter into the Cash on Cash Investment Program and Sarubin did in fact rely upon Coleman's representations in agreeing to enter into the Promissory Note.

43. As a result of defendants' negligent misrepresentations, Sarubin has suffered extreme emotional distress, worry, anxiety and injury as he has lost the ability to obtain cutting edge medical care for his sick and dying wife and has been forced to watch his wife's health deteriorate as a result of her learning of the defendants' fraud. Sarubin has suffered general and special damages in excess of $1,000,000.

44. Wherefore, Sarubin prays for judgment as more fully set forth below.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

45. Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 44, above, as though fully set forth herein.

46. When Defendants solicited and accepted Sarubin's $300,000 investment pursuant to the Promissory Note, Defendants owed Sarubin a fiduciary duty to place Sarubin's interests above their own. Defendants violated their fiduciary duties to Sarubin by, *inter alia*, misrepresenting the safety of the investment, falsely claiming that the principal was insured, and representing that the Cash on Cash Investment Program was a *bona fide* investment program that would not place Sarubin's investment at risk at a time when Defendants knew or should have known that they had no intent, or it would be impossible for them, to honor the terms of the Promissory Note.

47. As a result of defendants' breaches of their fiduciary duties, Sarubin has suffered extreme emotional distress, worry, anxiety and injury as he has lost the ability to obtain cutting edge medical care for his sick and dying wife and has been forced to watch his wife's health deteriorate as a result of her learning of the defendants' fraud. Sarubin has suffered general and special damages in excess of $1,000,000.

48. The actions of defendants as set forth herein were fraudulent, malicious, oppressive, and taken in conscious disregard of the rights of Sarubin. Punitive damages should be imposed upon the defendants, and each of them, to make an example of said

defendants and to deter such conduct in the future.

49. Wherefore, Sarubin prays for judgment as more fully set forth below.

### FIFTH CAUSE OF ACTION

### (Breach of Contract – Anticipatory)

50. Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 49, above, as though fully set forth herein.

51. Pursuant to the promissory note, the first payment was to be paid from K Platinum to Sarubin on January 19, 2007. Due to the change in the interest rate on the first payment to 30%, the first payment was to be in the amount of $90,000, and all subsequent payments were to be $75,000. On December 29, 2006, Sarubin received a certified letter stating that K Platinum would "not be sending payments to our cash-on-cash customers" for an unspecified period of time that K Platinum was "restructuring." Additionally, representatives of K Platinum have represented that it has $4 million in assets as against $18 million in liabilities. Thus, K Platinum has signaled that it will not, and cannot, abide by the terms of the promissory note.

52. Due to Defendants' breach of the Promissory Note Sarubin has been injured in an amount according to proof but at least $840,000.

53. Wherefore, Sarubin prays for judgment as more fully set forth below.

### SIXTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

54. Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 53, above, as though fully set forth herein.

55. California law implies in every contract a covenant of good faith and fair dealing. The implied covenant requires that each party refrain from doing any unreasonable act that prevents the other party of the contract from obtaining the benefits thereof.

56. Defendants breached the implied covenant by, *inter alia*, misrepresenting the safety of the investment, falsely claiming that the principal was insured, and representing that the Cash on Cash Investment Program was a *bona fide* investment program that would

not place Sarubin's investment at risk at a time when Defendants knew or should have known that they did not intend, or it would be impossible for them, to honor the terms of the Promissory Note.

57. As a result of Defendants' breaches of the implied covenant of good faith and fair dealing, Sarubin has suffered extreme emotional distress, worry, anxiety and injury as he has lost the ability to obtain cutting edge medical care for his sick and dying wife and has been forced to watch his wife's health deteriorate as a result of her learning of the defendants' fraud. Sarubin has suffered general and special damages in excess of $1,000,000.

58. The actions of defendants as set forth herein were fraudulent, malicious, oppressive, and taken in conscious disregard of the rights of Sarubin. Punitive damages should be imposed upon the defendants, and each of them, to make an example of said defendants and to deter such conduct in the future.

59. Wherefore, Sarubin prays for judgment as more fully set forth below.

### SEVENTH CAUSE OF ACTION
### (Conversion)

60. Sarubin incorporates by reference each and every allegation contained in paragraphs 1 through 59, above, as though fully set forth herein.

61. Defendants' act of accepting the $300,000 investment from Sarubin and failing and refusing to honor their obligations under the Promissory Note constitutes an unlawful conversion of Sarubin's funds.

62. As a result of Defendants' conversion, Sarubin has lost use of his funds. Further, Sarubin has suffered extreme emotional distress, worry, anxiety and injury as he has lost the ability to obtain cutting edge medical care for his sick and dying wife and has been forced to watch his wife's health deteriorate as a result of her learning of the defendants' fraud. Sarubin has suffered general and special damages in excess of $1,000,000.

63. The actions of defendants as set forth herein were fraudulent, malicious,

oppressive, and taken in conscious disregard of the rights of Sarubin. Punitive damages should be imposed upon the defendants, and each of them, to make an example of said defendants and to deter such conduct in the future.

64. Wherefore, Sarubin prays for judgment as more fully set forth below.

**PRAYER**

WHEREFOR, Plaintiff Bruce Sarubin prays:

(1) For special damages in the amount of $840,000 or according to proof;

(2) For general damages in the amount of $1,000,000 or according to proof

(3) For punitive damages;

(4) For attorney's fees and costs pursuant to the Promissory Note; and

(5) For such other and further relief as the court may deem proper.

Dated: January 5, 2007        SCHWARTZ & CERA LLP

Robert J. Scott, Jr.
Attorneys for Plaintiff
BRUCE SARUBIN